UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON

NATHANIAL BROWN,         )
                          )
      Plaintiff,       )      Civil Action No. 16-91-DLB
                          )
v.                      )
                          )      **MEMORANDUM OPINION**
RYAN STACY, Correctional Officer, *et*  )          **AND ORDER**
*al.*,                 )
                          )
      Defendants.   )

**** **** **** ****

Plaintiff Nathanial Brown is an inmate currently confined by the Kentucky Department of Corrections ("KDOC") at the Bell County Forestry Camp, located in Pineville, Kentucky.  Brown has filed a *pro se* 42 U.S.C. § 1983 civil rights complaint [R. 1] in which he asserts various constitutional claims against five officials employed by the Eastern Kentucky Correctional Complex ("EKCC"),[1] located in West Liberty, Kentucky. Brown's claims arise from a series of events which allegedly transpired between September 13, 2015, and November 25, 2015, while Brown was confined at the EKCC.

Because Brown asserts claims against government officials, and because he has been granted pauper status, the Court must conduct a preliminary review of his complaint pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a).  These statutes require that the Court dismiss any action which: (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant

---

[1] Brown names as defendants the following EKCC Correctional Officers ("CO"):  (1) Ryan Stacy; (2) William Wells; (3) Sergeant Jonathon Dingus; (4) Conner Hall; and (5) Aaron Potter.

who is immune from such relief.  28 U.S.C. 1915(e)(2)(B)(i)-(iii); 1915A(b)(1)-(2).[2]  As explained below, Brown's Eighth Amendment claims alleging excessive force against CO William Wells will be dismissed without prejudice, because a ruling in Brown's favor on that claim in this § 1983 civil rights action would necessarily imply the invalidity of Brown's prison disciplinary conviction for assaulting Wells, which resulted in Brown forfeiting 720 days of his good-time credits.  Brown's Eighth Amendment claims alleging excessive force asserted against Defendants Ryan Stacy, Jonathan Dingus, Conner Hall, and Aaron Potter will be allowed to proceed.  Brown's various other constitutional claims will be dismissed with prejudice for failure to state a claim upon which relief can be granted.

## ALLEGATIONS OF THE COMPLAINT

Brown alleges that on September 13, 2015, he was in the EKCC dining hall, near the exit, having a conversation with Defendants William Wells, Jonathon Dingus, and Ryan Stacy.  [R. 1, p. 2, ¶ 1]  Brown asked Wells why he removed a food tray which Jeffery Hunter, another inmate, had given him.  [R. 1, p. 2, ¶ 1]  The conversation deteriorated, and below is Brown's version of the ensuing events:

> 2.  Wells pointed his finger in Browns [sic] face and exclaimed "'Your [sic] an inmate, you have no rights!'"  Wells then grabbed Browns [sic] left arm and rotated it behind his back before lifting him off the ground and slamming him up against the window pane near the exit of the dining hall….

> 3.  Dingus and Stacy then handcuff Brown while Wells drops him to the ground.  Brown is then forced in to [sic] what is commonly referred to as a 'chicken-wing restraint' where his arms were held behind his back over his

---

[2]  Because Brown is proceeding *pro se*, the Court liberally construes his claims and accepts his factual allegations as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).

head which caused his torso to be parallel to the ground and his knees to bend.

4.  Dingus and Stacy escort Brown out of the dining hall.

5.  While being escorted, Dingus and Stacy shoved Brown face down on the ground.  While on the ground, Stacy used his knee to strike Browns [sic] head multiple times….

6.  Seconds later, defendant Conner Hall arrives and places leg shackles on Brown.  Brown is now hogtied.  Dingus, Stacy, and Hall then lift Brown off the ground and start to carry him to the segregation dorm.

7.  On the way to segregation, Stacy, Dingus, and Hall intentionally crash Browns [sic] head into every door and door frame between the prisons [sic] basement A.K.A. 'Phase 1 pill call' and the segregation dorm.

8.  At this point, Brown feels severe pain in his head and vision is very hazy.  Brown is then slammed head first into both of the entry doors of the segregation dorm.

9.  Brown was met by defendant Aaron Potter and Lt. Kevin Dennis, both of whom took control of the escort.  Potter and Dennis rush Brown into an empty shower stall located in one of the segregation wings.

10.  While in the shower stall, Browns [sic] face was jammed into a corner, at the same time Potter squeezed Browns handcuffs extremely tight and twisted Browns wrist until he squealed in pain.  Potters [sic] action caused bruising around Browns [sic] wrist that lasted several days.

11.  Several minutes later, Nurse Johnna Lewis enters the shower and immediately notices the deep cut on top of Browns bleeding head and says 'he might need stitches.'  Nurse Lewis also noted the bruising around Browns wrist….

12.  Brown is then placed in a restraint chair and wheeled to the front entrance of segregation where he was surrounded by numerous correctional officers, including the defendants, Nurse Lewis, and an unidentified female nurse.

[*Id.*, pp. 2-5, ¶¶ 2-12]

Brown thus alleges that during the September 13, 2015, incident in the EKCC dining hall and his escort to the segregation unit, all five EKCC defendants applied excessive force to him in violation of his right to remain free from cruel and unusual punishment, which is guaranteed under the Eighth Amendment of the U.S. Constitution. Brown alleges that as a result of the five defendants' use of excessive force, he sustained serious bodily injuries which required medical treatment and which have caused him to suffer physical pain and suffering.  In support of his version of events, Brown attaches the statements of several other inmates who support his version of the encounter with the EKCC defendants.

But the story does not end there; as a result of the September 13, 2015, incident in the EKCC dining hall, Brown received four (4) separate Disciplinary Reports ("DR") charging him with violating various KDOC disciplinary rules.  The four disciplinary charges, and their dispositions, are summarized below.

### 1. First Disciplinary Charge

In **DR# EKCC-2015-04608**, CO William Wells charged Brown with "7-01, Physical Action against an Employee or Non-Inmate," which the DRF identifies as a "Major" category offense.  In the "Description of Incident" section, Wells stated that when he questioned Brown about receiving a second tray of food from another inmate, Brown slammed down his food tray and took an aggressive stance.  [R. 1-1, p. 18] Wells further described the incident:

> At that time myself, C/O Ryan Stacy #558, and Sgt. Jonathan Dingus #204 then went to restrian [sic] Inmate Brown, and at that time punched me in the ribs.  Myself and C/O Stacy then got him in handcuffs and C/O Stacy and Sgt. Dingus escorted him out of the Dining Room.

4

[*Id.*]

The investigating officer interviewed Brown, who denied hitting CO William Wells, and CO Ryan Stacy and Sergeant Dingus, both of whom stated that Brown slammed down his food tray, took and aggressive stance toward CO William Wells, and that when they tried to restrain Brown, he punched CO William Wells in the ribs.  [*Id.*, "Report of Investigating Officer"] The investigating officer also interviewed Lieutenant Sarah Prater, who reviewed surveillance tape but determined that the incident took place out of camera range.  [*Id.*]

The disciplinary hearing transpired on September 30, 2015.  Based on the Officer's Report and the Occurrence Report, Hearing Officer Michael H. Smith found Brown guilty of the offense of "7-01, Physical Action against an Employee or Non-Inmate."   [*Id.*, pp. 27-28][3]   Hearing Officer Smith imposed two sanctions:   (1) confinement in the Disciplinary Segregation Unit ("DSU") for 180 days and, (2) forfeiture of 720 days of Brown's non-restorable good-time credit ("NRGTC").  [*Id.*, p. 27, ¶6; ¶8] Brown appealed, but on October 26, 2015, EKCC Warden Kathy Litteral concurred with Hearing Officer Smith's decision, which she determined was supported by the evidence. [*Id.*, p. 28 ("Warden's Review")]

---

[3] Hearing Officer Smith's conclusions were as follows:

> The Hearing Officer finds you guilty based on the Officer's Report, Occurrence Reports indicating you struck the Officer while in the Dining Room, medical EOR indicating a red mark was documented on staff after this incident, review of the video which shows you being restrained before going out of view and the reporting Employee's telephone testimony indicating the correct date for the report should be 09-13-15 as well as he was hit while you was being restrained in the Dining Room….

> [*Id.*, p. 27 ("Findings")]

5

### 2.  The Second Disciplinary Charge

In **DR# EKCC-2015-04609**, Sergeant Dingus charged Brown with "7-01, Physical Action against an Employee or Non-Inmate," which, again, is identified as a "Major" category offense.  [*Id.*, p. 22]   In the "Description of Incident" section, Sergeant Dingus stated that on September 13, 2015, he and CO Ryan Stacy were escorting Brown out of Dining Room 1 to Dorm 5 "due to assualting [sic] staff."  [*Id.*]  When they arrived at the door entering the basement, Brown pushed him (Dingus) into the door frame, causing his (Dingus's) left arm to "hurt and swell."  [*Id.*]  Dingus stated, "At that time myself and C/O Stacy placed Inmate Brown on the ground to gain control, and C/O Conner Hall #478 placed leg shackles on Inmate Brown.  Also while placing Inmate Brown on the ground I recieved [sic] a cut on my right wrist."  [*Id.*]

The disciplinary hearing transpired on September 30, 2015.  [*Id.*, p. 35]  Based on the Officer's Report and the Occurrence Report, Hearing Officer Michael H. Smith found Brown guilty of the offense of "7-01, Physical Action against an Employee or Non-Inmate."  [*Id.*, pp. 35-36]  Hearing Officer Smith again imposed two sanctions:  (1) confinement in the DSU for 180 days and, (2) forfeiture of 360 days of Brown's NRGTC. [*Id.*, p. 35, ¶ 6; ¶8]  Brown successfully appealed; on October 29, 2015, Warden Litteral dismissed the charge against Brown and "voided" the incident.  *See id.*, p. 36 ("Action Taken: Void Incident (Dismiss).  Reason:  This Report is voided.)

### 3.  The Third Disciplinary Charge

In **DR# EKCC-2015-04612**, CO Ryan Stacy charged Brown with "4-19, Making Threatening or Intimidating Statements," a major category offense, in connection with

the events in the EKCC dining hall on September 13, 2015. [*Id.*, pp. 24-25]. The disciplinary hearing transpired on September 30, 2015. [*Id.*, p. 30] Based on CO Ryan's Report, Hearing Officer Michael H. Smith found Brown guilty of a another offense, "3-20, Disrespectful Language/Gestures/Actions against a non-inmate." [*Id.* ("Findings")] Whether Hearing Officer Smith's revoked any of Brown's GTC is unclear, as he stated "The Hearing Officer issues revokes 30 days GTL suspended on 04-08-15." [*Id.*] The Hearing Officer's Report, at ¶ 6 and ¶ 8, does not reflect that Brown lost any GTC, or NRGTC, as a result of the "3-20" disciplinary conviction. [*Id.*] Brown again successfully appealed; on November 3, 2015, Warden Litteral dismissed the charge against Brown, and "voided" the incident. *See id.*, p. 31 ("Action Taken: Void Incident (Dismiss). Reason: This Report is voided.")

### 4. The Fourth Disciplinary Charge

In **DR# EKCC-2015-04614**, CO Ryan Stacy charged Brown with "7-01, Physical Action against an Employee or Non-Inmate." [*Id.*, p. 20] In the "Description of Incident" section, CO Stacy stated that on September 13, 2015, he and CO Jonathan Dingus were escorting Brown, who was wearing wrist restraints, to Dorm 5, and that "When we entered the phase-1 pill call area Inmate Brown was combative and began to kick his legs striking me in the legs multiple times, at this time myself and Sgt. Dingus placed him on the ground till further assistance arrived with leg restraints. Inmate Brown continued to resist and making racial statements towards staff the entire way to dorm-5." [*Id.*]

The disciplinary hearing transpired on September 30, 2015.  [*Id.*, p. 33]  Hearing Officer Michael H. Smith found Brown guilty of the offense of "7-01, Physical Action against an Employee or Non-Inmate."  [*Id.* ("Findings")]  Smith based his finding of guilt on "…the Officer's Report, medical EOR indicating Officer Stacy had redness documented on his right thigh, review of the video which shows you [Brown] being restrained before going out of view in the Dining Room and the fact you had to be further restrained before going on to Dorm 5."  [*Id.*]  Hearing Officer Smith imposed two sanctions:  (1) confinement in the DSU for 180 days and, (2) forfeiture of 360 days of Brown's NRGTC.  [*Id.*, ¶6; ¶8]  Brown again appealed, and on October 29, 2015, EKCC Warden Kathy Litteral dismissed the charge against Brown, and voided the incident.  *See id.*, p. 34 ("Action Taken: Void Incident (Dismiss).  Reason:  This Report is voided.")

Given the dismissal of three of the four disciplinary charges, Brown currently stands convicted only the First Disciplinary Conviction, **DR# EKCC-2015-04608**, in which he was convicted of "7-01, Physical Action against an Employee or Non-Inmate" (CO William Wells), and Brown currently faces the forfeiture of 720 days of his NRGTC. However, in his § 1983 complaint, Brown alleges that "All of the disciplinary reports were dismissed when Brown appealed them to the Warden of the prison.  The dismissed reports are attached as Exhibit F."  [R. 1, p. 8, ¶ 20]  But contrary to Brown's assertion, it does not appear that EKCC Warden Kathy Litteral dismissed the charges contained in **DR# EKCC-2015-04608**, or that she voided Brown's conviction for assaulting CO William Wells.  In fact, the disciplinary records which Brown attached to his § 1983 complaint reflect that Warden Litteral **affirmed** his disciplinary conviction

8

(identified as **DR# EKCC-2015-04608**) for assaulting CO William Wells, based on the fact that Hearing Officer Michael H. Smith's decision was "supported by the evidence." *See* R. 1-1, p. 28 ("Warden's Review").  Again, that disciplinary conviction carried with it the forfeiture of 720 days of Brown's NRGTC.

Brown further alleges that between September 13, 2015, and November 25, 2015, he was denied medical treatment at the EKCC in violation of his Eighth Amendment rights, and that he was denied other necessary items and services, such as pens, paper, access to recreational activities, hygiene items, and access to the prison's mail system, in violation of his right of access to the courts guaranteed by the First Amendment of the U.S. Constitution.  Finally, Brown alleges that EKCC officials wrongly denied several administrative grievances which he filed against the EKCC defendants, all in violation of his right to due process, guaranteed by the Fourteenth Amendment of the U.S. Constitution.  Brown sues each defendant in his individual capacity, and seeks substantial compensatory and punitive damages from them, jointly and severally.  [*Id.*, R. 1, p. 15]

### DISCUSSION

### 1.   Eighth Amendment Claims Against CO William Wells

In his § 1983 complaint, Brown alleges that on September 13, 2015, CO William Wells applied excessive force to him in the EKCC dining hall, causing him to sustain various bodily injuries.   However, as discussed, on September 30, 2015, at the conclusion of a due process disciplinary hearing, Hearing Officer Michael H. Smith found Brown guilty of the offense of "7-01, Physical Action against an Employee or Non-

Inmate" based on the same underlying events of September 13, 2015, and imposed sanctions consisting of a 180-day confinement in the DSU and forfeiture of 720 days of Brown's NRGTC.  Put another way, the same facts which form the basis of Brown's Eighth Amendment excessive force claim against CO William Wells are the same facts under which Hearing officer Michael H. Smith found Brown guilty of a Major category disciplinary offense, "Physical Action against an Employee or Non-Inmate."  If this Court entertained Brown's Eighth Amendment excessive force claim against CO William Wells based on the events of September 13, 2015, and/or subsequently ruled in Brown's favor on that excessive force claim, it would lead to patently inconsistent results stemming from the same set of underlying facts.  Therefore, Brown cannot use a § 1983 civil rights action to assert an Eighth Amendment excessive force claim against Wells based on the events which transpired in the EKCC dining hall on September 13, 2015, **unless and until** he can demonstrate a favorable termination of his disciplinary conviction (**DR# EKCC-2015-04608**) stemming from those same events.

In *Heck v. Humphrey*, the Supreme Court established the so-called "favorable termination rule."  512 U.S. 477, 114 S.Ct. 2364 (1994).[4]  The Supreme Court has held that any claim for damages that, if successful, would "necessarily imply" the "invalidity of

---

[4] The Court explained that rule as follows:

> [T]o recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.

*Id*., at 486-87.

any outstanding criminal judgment against the plaintiff" is not cognizable in a civil rights action unless the plaintiff demonstrates that judgment's prior invalidation.  *Id.*, at 487 This rule promotes the finality of and consistency in judicial resolutions by limiting opportunities for collateral attack and averting the "creation of two conflicting resolutions arising out of the same or identical transaction."  *See id.*, at 484-485.  In *Edwards v. Balisok*, the Supreme Court later extended the "favorable termination rule" to a prison disciplinary hearing resulting in the deprivation of good-time credits, where the prisoner's civil rights action alleging the denial of his due process rights would "necessarily imply" the invalidity of the deprivation of good-time credits.  520 U.S. 641, 646 (1997).

The Supreme Court has subsequently clarified that a prisoner must show a favorable termination of his disciplinary proceeding before filing a civil action in cases where the duration of his sentence has been affected.  *See Muhammad v. Close*, 540 U.S. 749 (2004).   Thus, a prisoner found guilty in a prison disciplinary hearing cannot use either 42 U.S.C. § 1983 or *Bivens* to collaterally attack the hearing's validity or the conduct underlying the disciplinary conviction.  *See Lanier v. Bryant*, 332 F.3d 999, 1005 (6th Cir. 2003) (extending *Heck* to *Bivens* claims); *Johnston v. Sanders*, 86 F. App'x 909, 910 (6th Cir. 2004) ("[Petitioner] cannot challenge a disciplinary proceeding resulting in a loss of good-time credits in a *Bivens* action [when] his disciplinary conviction has not been reversed."); *Denham v. Shroad*, 56 F. App'x 692, 693 (6th Cir. 2003); *Lewis v. Pendell*, 90 F. App'x 882, 883 (6th Cir. 2004) (prisoner was precluded from collaterally attacking prison misconduct hearing or conduct underlying disciplinary

conviction by alleging retaliation under 42 U.S.C. § 1983, where favorable ruling on his retaliation claim would imply invalidity of disciplinary conviction); *Denham v. Shroad*, 56 F. App'x 692, 693 (6th Cir. 2003) ("Because a favorable ruling on Denham's Eighth Amendment claim [alleging excessive use of force by prison officials] would imply the invalidity of his disciplinary conviction, this claim is not cognizable."); *Huey v. Stine*, 230 F.3d 226, 230-31 (6th Cir. 2000).[5]

Again, to establish a favorable termination, Brown must first successfully challenge the validity of his disciplinary conviction by filing of writ of habeas corpus pursuant to 28 US.C. § 2254.  If, and only if, Brown's prison disciplinary conviction identified as **DR# EKCC-2015-04608** is invalidated during that process, may he then bring a civil claim against CO William Wells alleging excessive force with respect to the events in the EKCC dining hall on September 13, 2015, which resulted in his disciplinary conviction and the loss of 720 days of his NRGTC.  Brown's Eighth Amendment excessive force claim against CO William Wells will therefore be dismissed without prejudice to Brown's obtaining a favorable termination of his disciplinary conviction identified as **DR# EKCC-2015-04608**.

---

[5] *See also Lockett v. Suardini*, No. 2:05-CV-187, 2006 WL 2521621, at *5 (Aug. 30, 2006) (dismissing the prisoner-plaintiff's excessive force claims against two prison officials based on the "favorable termination" requirement" set forth in *Balisok* and *Heck*, where the prisoner had previously been found guilty in a prison disciplinary proceeding of assaulting the defendant prison officials during the same encounter which formed the basis of the prisoner's Eighth Amendment excessive force claim, concluding that "… the Hearing Officer's finding in this case directly contradicts Plaintiff's claim of excessive force.  Accordingly, Plaintiff's claim remains noncognizable under § 1983 because a ruling on the claim would, if established, necessarily imply the invalidity of his disciplinary conviction."); *Drummer v. Luttrell*, 75 F. Supp. 2d 796, 802-03 (W.D. Tenn. Nov. 22, 1999) (holding that under *Heck* and *Baliosk,* the prisoner-plaintiff's Eighth Amendment excessive force claims were barred because her disciplinary conviction and loss of GTC had not been set aside or reversed, and that if she prevailed on her Eighth Amendment excessive force claim, it would "necessarily imply the invalidity of the punishment imposed.").

### 2.   Eighth Amendment Claims Against CO Ryan Stacy, Sergeant Jonathan Dingus, CO Conner Hall, and CO Aaron Potter

As discussed, Warden Kathy Litteral dismissed and/or "voided" Brown's three other disciplinary convictions pursuant to which he had been found guilty of assaulting and/or taking aggressive action against CO Ryan Stacy and Sergeant Jonathan Dingus in the EKKC dining hall on September 13, 2015.   Thus, Brown has already obtained favorable terminations of those disciplinary convictions.   Further, Brown's Eighth Amendment excessive force claims against CO Conner Hall and CO Aaron Potter stem from alleged events which transpired *after* the specific encounter in EKCC dining hall, while Potter and Hall were escorting Brown from the dining hall area to the DSU.   Brown claims that during this journey, Hall and Potter repeatedly used excessive and unnecessary force on him.

The Court will require CO Ryan Stacy, Sergeant Jonathan Dingus, CO Conner Hall, and CO Aaron Potter to respond to Brown's Eighth Amendment claims alleging excessive force on September 13, 2015, either as to the alleged events in the EKCC dining hall, or while Brown was being escorted from the EKCC dining hall area to the DSU.   The London Clerk's Office will be directed to issue summons for CO Ryan Stacy, Sergeant Jonathan Dingus, CO Conner Hall, and CO Aaron Potter.   Because Brown has been granted pauper status, the United States Marshals Service ("USMS") will serve the summons and complaint on his behalf.   *See* Fed. R. Civ. P. 4(c)(3); 28 U.S.C. § 1915(d).

13

### 3.  Brown's Other Constitutional Claims

Brown further alleges that between September 13, 2015, and November 25, 2015, he was denied medical treatment at the EKCC in violation of his Eighth Amendment rights; that his requests for medical attention were "ignored," and that he was denied other necessary items such as clean clothes, soap, toothpaste, eating utensils, sleeping mat, blankets, pens, paper, recreational activities and access to the prison's mail system, in violation of his First Amendment right of access to the courts. [R. 1, pp. 6-9]   Brown also alleges that EKCC officials wrongly denied several administrative grievances which he filed against the five EKCC defendants, in violation of his right to due process guaranteed by the Fourteenth Amendment of the U.S. Constitution.   For various reasons, these claims must be dismissed.

First, Brown broadly alleges that he was denied medical treatment, various types of hygiene items, access to the prison mail system and the recreational facilities, pens, paper, pencils, but he does not identify the EKCC officials who were allegedly responsible for the denial of medical treatment and the other complained-of deprivations.   Brown names five defendants (CO William Wells, CO Ryan Stacy, Sergeant Jonathan Dingus, CO Conner Hall, and CO Aaron Potter), but the claims which Brown asserts against these five defendants allege *excessive force*, and pertain specifically to the alleged events of September 13, 2015, in the EKCC dining hall and soon thereafter while Brown was being escorted to the DSU.   Brown alleges **no** facts indicating or suggesting that any of the named defendants denied him medical treatment; denied him access to the prison mail system, thus impairing his right of

14

access to the courts, **or** that they were responsible for other deprivations about which he complains.  Brown does allege, however, that on September 13, 2015, EKCC Nurse Johnna Lewis examined him and treated his wounds.  [R. 1, p. 5, ¶ 11; p. 6, ¶ 13]

To state a cognizable Section 1983 claim, the plaintiff must allege some personal involvement by the each of the named defendants. *See Salehphour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir.1998), *cert. denied*, 526 U.S. 1115, 119 S.Ct. 1763, 143 L.Ed.2d 793 (1999); *Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (personal involvement by the defendant is an essential element in a § 1983 cause of action asserting a constitutional deprivation).  Brown does not allege facts indicating that the five named defendants, whom Brown identifies as EKCC correctional officers, were involved in decisions related to his medical treatment at the EKCC, either on September 13, 2015, or on any other date, nor does Brown allege that any of the five named defendants possess medical training and expertise that enable or qualify them to make decisions about his medical treatment.  Brown also does not allege that the named EKCC defendants were personally responsible for denying him hygiene items, pens, paper, and pencils, or that they impaired his right of access to the courts.

Brown also broadly alleges that he tried to grieve his complaints about the five named defendants through the prison's administrative remedy process, but that his grievances were either denied or rejected as untimely.  R. 1, p. 9, ¶¶ 24-25; *see also*, "Returned Grievance" [R. 1-1, p. 38 (Oct. 15, 2015); R. 1-1, p. 46 (Dec. 23, 2015).  Again, Brown names no specific defendant in connection with this particular claim, but to the extent that he could be broadly asserting claims against EKCC Grievance

Coordinator Sarah Potter and/or EKCC Warden Kathy Litteral, his construed § 1983 claims against them cannot proceed, because a plaintiff cannot maintain a § 1983 claim against prison officials based solely on the denial of a prisoner's grievance. "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." Grinter v. Knight, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d at 300). The mere denial of prisoner grievances by supervisory or higher-ranking administrative officials is insufficient personal involvement for imposing constitutional liability, under § 1983. *See Johnson v. Aramark*, 482 F. App'x 992, 993 (6th Cir. 2012); *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his grievances, not the individuals who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006).

Further, there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure," *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); and likewise, there is "no inherent constitutional right to an effective prison grievance procedure." *Argue v. Hoffmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991)). Thus, to the extent that Brown contends that he is, and was, dissatisfied with the structure of the EKCC"S administrative remedy process itself, **or** with the outcome of that administrative remedy process, he states no claim for relief under § 1983.

16

Finally, Brown alleges that for nine days (between September 13, 2015, and September 22, 2015) that he was denied certain items such as clean clothes (except for boxer shorts), soap, toothpaste, eating utensils, sleeping mat, blankets, pens, paper, and access to recreational activities, and claims that he "…had to eat all his meals like a dog."  [R. 1, pp. 6-7, ¶ 16]  Even assuming that Brown's allegation on these issues are true, such temporary conditions and deprivations, while no doubt unpleasant and/or uncomfortable, do not amount to Eighth Amendment violations.

The Eighth Amendment prohibits a punishment that violates civilized standards of decency or reflects unnecessary and wanton infliction of pain.  *Estelle v. Gamble*, 429 U.S. 97, 102–03 (1976)  A viable Eighth Amendment claim has both an objective and a subjective component, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and the objective component requires that the pain be sufficiently serious within the context of "contemporary standards of decency."  *Hudson v. McMillian*, 503 U.S. 1, 8 (1992) (internal quotation marks and citation omitted)  The subjective component requires a plaintiff to show that the defendant acted with deliberate indifference to the inmate's health or safety, *i.e.*, the plaintiff must show that prison officials had a "sufficiently culpable state of mind," where the officials were aware of and disregarded an excessive risk to an inmate's health or safety.  *Farmer*, 511 U.S. at 834.

The long-term denial of basic hygiene items may give rise to an Eighth Amendment claim, but a short-term denial of such items usually typically does not qualify as an Eight Amendment violation.  *See, e.g.*, *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) ("Courts have not found the objective component satisfied where the

17

deprivation of hygiene items was temporary."); *Matthews v. Murphy*, No. 90-35458, 1992 WL 33902, at *4 (9th Cir. Feb. 25, 1992) (noting that while "it has been held that 'the Eighth Aamendment forbids deprivation of the basic elements of hygiene,'" the deprivation of a towel, toothbrush, toothpowder, comb, soap, and other personal hygiene items for approximately 34 days did not rise to the level of an Eighth Amendment violation); *Crump v. Janz*, No. 1:10-CV-583, 2010 WL 2854266, at *4 (W.D. Mich. July 19, 2010) (holding complaint failed to plead an Eighth Amendment violation where inmate asserted "lack of deodorant, toothbrushes, toothpaste, postage, typing and carbon paper, and legal envelopes for 35 days"); *Gilland v. Owens*, 718 F. Supp. 665, 685 (W.D. Tenn.1989) ("Short term deprivations of toilet paper, towels, sheets, blankets, mattresses, toothpaste, toothbrushes and the like do not rise to the level of a constitutional violation.").   Further, Brown alleges no actual harm stemming from the alleged temporary denial of hygiene items.  *See Argue v. Hofmeyer*, 80 F. App'x at 430 (holding that a prisoner had failed to state an Eighth Amendment claim because he did not allege a complete denial of hygiene products, or that the deprivation occurred out of indifference to his hygiene needs, or that he suffered any harm because of the alleged denial).  Thus, as to Brown's allegation that he was denied the above-listed items on a temporary basis, he fails to state a claim upon which relief can be granted under the Eighth Amendment, and these claims will be dismissed for that reason.

## CONCLUSION

Based on the foregoing analysis and discussion, it is hereby **ORDERED** as follows:

18

(1)     Plaintiff Nathanial Brown's Eighth Amendment claims alleging that Defendant Correctional Officer William Wells applied excessive force to him on September 13, 2015, are **DISMISSED WITHOUT PREJUDICE**.  The Clerk of the Court shall **NOTE** the termination of Defendant CO William Wells on the CM/ECF cover sheet.

(2)     Brown's Eighth Amendment claims alleging that EKCC Correctional Officers Ryan Stacy, Conner Hall, and Aaron Potter, and EKCC Sergeant Jonathon Dingus applied excessive force to him on September 13, 2015, **SHALL PROCEED**, and these four defendants **MUST RESPOND** to Brown's Eighth Amendment claims against them.

(3)     Brown's Eighth Amendment claims alleging the denial of clean clothes soap, toothpaste, eating utensils, sleeping mat, blankets, pens, paper, pencils, and denied access to prison recreational activities; his First Amendment claims alleging denied access to the prison mail system; his Eighth Amendment claims alleging the denial of medical treatment/deliberate indifference to his medical needs; and his Fourteenth Amendment due process claims challenging the EKCC grievance process, including the denial of his administrative grievances filed against the five named defendants, are **DISMISSED WITH PREJUDICE** for failure to state a claim upon  which relief can be granted.

(4)     A Deputy Clerk in the London Clerk's Office shall prepare a "Service Packet" for Defendants Correctional Officers Ryan Stacy, Conner Hall, Aaron Potter, and EKCC Sergeant Jonathon Dingus, at the EKCC, in West Liberty Kentucky.  The Service Packet shall include:

19

    (a)     a completed summons form;

    (b)     the complaint [R. 1] and all attachments thereto;

    (c)     a copy of the this Memorandum Opinion and Order; and

    (d)     a completed USM Form 285.

(5)    The London Deputy Clerk shall send the Service Packets to the USMS located in Lexington, Kentucky.

(6)    The USMS is responsible for ensuring that Defendants EKCC Correctional Officers Ryan Stacy, Conner Hall, Aaron Potter, and EKCC Sergeant Jonathon Dingus are successfully served with process.  In the event that an attempt at service upon any of these defendants is unsuccessful, the USMS shall make further attempts and shall ascertain such information as is necessary to ensure successful service.

(7)    Within 40 days of the date of entry of this Order, the USMS Office shall send a Service Report to the London Clerk's Office, which the Deputy Clerk shall file in the record, which states whether service was accomplished with respect to the four defendants identified above.

    (a)    If any or all of the four defendants identified above are served by certified mail, the Service Report shall include:

        (1)    A copy of the green card showing proof of service; or

        (2)    A statement that the green card was not returned from the U.S. Postmaster, along with a "Track-and-Confirm" report from the U.S. Postal Service showing that a proof of delivery does not exist.

    (b)    If any or all of the four defendants identified above are personally served, the Service Report shall indicate:

20

(1)     that the defendant(s) were successfully served personally, or

(2).     a statement explaining that the defendant(s) could not be served and what efforts are being taken to locate the defendant(s) and accomplish personal service.

(8)   Brown must keep the Clerk of the Court informed of his current mailing address.  Failure to notify the Clerk of any change of address may result in dismissal of this case.

(9)   **With every notice or motion filed with the Court, Brown must (a) mail a copy to each defendant (or his or her attorney); and (b) at the end of the notice or motion, certify that he has mailed a copy to each defendant (or his or her attorney) and the date on which this was done.  The Court will disregard any notice or motion which does not include this certification**.

This 26th day of July, 2016.



Signed By:

*David L. Bunning*

United States District Judge

K:\DATA\ORDERS\London\2016\16-cv-91 Order CKS.doc