UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

CIVIL ACTION NO. 6:16-CV-91-DLB-EBA

NATHANIAL BROWN,                                                                                           PLAINTIFF,

V.                           **MAGISTRATE JUDGE'S REPORT
                              AND RECOMMENDATION**

RYAN STACY, et al.,                                                                                        DEFENDANTS.

## INTRODUCTION

Plaintiff Nathanial Brown alleges Defendants Ryan Stacy, William Wells,[1] Johnathon Dingus, Conner Hall, and Aaron Potter violated his rights under 42 U.S.C. § 1983 and the Eighth Amendment of the United States Constitution. [R. 1 at 1, 11]. Defendants, claiming qualified immunity, deny all liability. [R. 30; R. 32]. Both parties have moved for Summary Judgment, and, pursuant to District Judge Bunning's Referral Order, [R. 33], this Court has considered those motions. [R. 52; R. 54]. After careful consideration and detailed review, and for the reasons that follow, this Court **HEREBY RECOMMENDS** that **BOTH** Plaintiff's and Defendants' Motions for Summary Judgment, [R. 52; R. 54], be **DENIED**.

## FACTUAL BACKGROUND & PROCEDURAL HISTORY

The following facts are uncontested:[2]

Plaintiff is a former inmate of the Kentucky Department of Corrections at the Eastern Kentucky Correctional Complex, the "Complex," in West Liberty, Kentucky, [R. 52-1 at 1; R. 54-

---

[1] Plaintiff initially included William Wells as a defendant to Plaintiff's suit. Defendant Wells was terminated as a Defendant to the suit on July 26, 2016. [R. 7]. Defendant Wells, however, was reinstated as a Defendant to the suit on August 31, 2016. [R. 16].

[2] These events primarily took place outside the range of surveillance cameras. [*See generally* R. 1-1, Ex. E (the incidents described herein primarily occurred out of the view of cameras); *but see* R. 1-1 Ex. F (review of the only video available from the cafeteria shows Plaintiff being restrained before "going out of view")].

1 at 1], where, at approximately noon on September 13, 2015, the series of events giving rise to this suit began. [R. 1 at 2 ¶1; R. 52-1 at 4; R. 54-1 at 1]. At that time in the Complex's cafeteria, Defendant Wells spoke with Plaintiff about why Defendant Wells removed a food tray from Plaintiff's possession. [R. 1 at 2 ¶ 1; R. 32 at 1 ¶ 1]. During the discussion, Defendant Wells applied force to Plaintiff's left arm and pinned Plaintiff against a nearby structure. [R. 1 at 3 ¶ 2; R. 32 at 1 ¶ 2].[3] Shortly thereafter, Defendants Dingus and Stacy handcuffed Plaintiff, placing him in a "chicken wing restraint." [R. 1 at 3 ¶ 3; R. 32 at 1 ¶ 3]. After restraining Plaintiff, Defendants Dingus and Stacy removed Plaintiff from the cafeteria. [R. 1 at 3 ¶ 4; R. 32 at 2 ¶ 4].

After Defendants Dingus and Stacy removed Plaintiff from the cafeteria, Defendant Hall placed leg restraints on Plaintiff, and Plaintiff was taken to the Segregation Area. [R. 1 at 4 ¶ 6, 9; R. 32 at 2 ¶ 6, 9]. Once in the Segregation Area—handcuffed, shackled at the legs, and held in the "chicken wing" position—Plaintiff was rushed by Defendant Potter and Lieutenant Kevin Dennis to an empty shower stall. [R. 1 at 2 ¶ 9; R. 32 at 2 ¶ 9]. Although what occurred inside the shower stall is contested, it is known that Nurse Lewis noted bruising around Plaintiff's wrists upon her entry to the shower stall. [R. 1 at 3 ¶ 11; R. 32 at 2 ¶ 11]. Plaintiff was then placed in a restraint chair and wheeled to the entrance of the Segregation Area, where he was surrounded by numerous correctional officers, including all Defendants, Nurse Lewis, and an unidentified female nurse. [R. 1 at 3 ¶ 12; R. 32 at 2 ¶ 12]. At this time before everyone, Lieutenant Kevin Dennis used scissors to cut off Plaintiff's clothing, leaving only Plaintiff's boxer shorts intact. [R. 1 at 4 ¶ 13; R. 32 at 2 ¶ 13]. Also at this time, Nurse Lewis noted a "deep abrasion" to the top of Plaintiff's head. [R. 1 at 4 ¶ 14; R. 32 at 2 ¶ 14]. Plaintiff also appeared "drowsy" with "eyes red;" Plaintiff's pupils

---

[3] Defendants, in their Motion for Summary Judgment, [R. 54-1], contradict this earlier statement of fact in their late Answer, [R. 32 at 1 ¶ 2].

2

were "pinpoint," and he exhibited both a "sluggish" reaction to light and slurred speech. [R. 1-1, *Nurse Lewis' Accident/Extraordinary Occurrence Report*, at 15].

After his head wound was tended, Plaintiff was wheeled into an observation cell. [R. 1 at 4 ¶ 15; R. 32 at 2 ¶ 15]. Plaintiff believes he was left in the cell for one hour; Defendants "assert it was no more than two hours." [R. 1 at 4 ¶ 15; R. 32 at 2 ¶ 15]. Plaintiff was eventually removed from the restraint chair and placed on "15 Minute Watch" for nine (9) days, during which time Plaintiff wasn't permitted additional clothes beyond his boxer shorts; was denied soap, toothpaste, blankets, socks, and was forced to sleep on a metal rack. [R. 1 at 4–5 ¶ 16; R. 32 at 3 ¶ 16]. Plaintiff was also denied writing utensils, access to mail, and eating utensils. [R. 1 at 4–5 ¶ 16; R. 32 at 3 ¶ 16]. When Plaintiff was removed from "15 Minute Watch" on September 22, 2015, he was served with four disciplinary reports, each of which formed the basis for disciplinary action. [R. 1 at 5 ¶ 17, 18; R. 32 at 3 ¶ 17, 18]. All of the disciplinary reports and actions, however, were dismissed and reversed upon Plaintiff's appeal to the Warden of the Complex.[4] [R. 1 at 6 ¶ 20; R. 1-1 at 26–36; R. 32 at 3 ¶ 20]. Plaintiff was released from the Segregation Unit on November 25, 2015, and he was moved to another institution on January 5, 2016. [R. 1 at 6 ¶ 20, 22; R. 32 at 3 ¶ 21, 22].

## SUMMARY JUDGMENT STANDARD

"A party may move for summary judgment, identifying each claim or defense—or the part of each claim or defense—on which summary judgment is sought." Fed. R. Civ. P. 56(a). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* In making the

---

[4] It is actually unclear whether the first of the four disciplinary actions was reversed. [R. 1-1 at 28, *Warden's Review*; R. 7 at 5]. District Judge Bunning initially found it was not. [R. 7 at 5, 8–9]. District Judge Bunning, however, reversed his own finding in a second order, [R. 16], based upon new evidence submitted by Plaintiff for reconsideration of the issue, [R. 11-1 at 5]. It remains a fact question, however, as to whether Plaintiff's first conviction was reversed; District Judge Bunning on reconsideration found only that the new evidence "creates a valid question as to whether that disciplinary conviction was set aside." [R. 16 at 4].

3

determination as to whether summary judgment is warranted, "a court must view the evidence 'in the light most favorable to the opposing party.'" *Tolan v. Cotton*, 134 S.Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Id.* (quoting *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). In such a case, summary judgment is warranted. *Alabama v. North Carolina*, 560 U.S. 330, 344 (2010); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). But there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* As such, in some cases, the moving party may be "'entitled to a judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Id.* (quoting Fed. R. Civ. P. 56). Such a motion "therefore requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). This is so because "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses." *Id.* at 323–24. "[T]he existence of a mere scintilla of evidence in support of the non-moving party's position will not be sufficient; there must be evidence on which the jury could reasonably find for the non-moving party." *Sutherland v. Mich.*

*Dept. of Treasury*, 344 F.3d 603, 613 (6th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986)).

This standard is not altered upon the submission of cross motions for summary judgment. Upon encountering cross motions for summary judgment, a district court is not required to grant judgment for one side or the other. *Sedona Corp. v. Open Solutions, Inc.*, 646 F.Supp.2d 262 (D.Conn. 2009). Rather, each motion is considered on its own merits, taking care in each instance to draw the proper inferences against the party whose motion is being considered. *Id.*; *see, e.g., Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005); *Farmer's and Miner's Bank v. Terry Lee et al.*, 2017 WL 4707457 (E.D. Ky. Oct. 19, 2017) (No. 6:15-CV-64-HAI); *Leonel Miranda Martinez v. Steve Hiland et al.*, 2017 WL 4799861 (W.D. Ky. Oct. 24, 2017) (5:13-CV-P182-GNS) (citing *Anderson*, 477 U.S. at 252).

## **PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

In his Motion for Summary Judgment, [R. 52], Plaintiff argues he is entitled to judgment as a matter of law due to the lack of a dispute as to material facts based on Defendants' failure to timely respond to Plaintiffs' requests for admission under Fed. R. Civ. P. 36, [R. 52-1 at 3–7]. Defendants Respond, [R. 56], that qualified immunity shields them from suit, [*Id.* at 1], and that "Plaintiff is also not entitled to dismissal" pursuant to Fed. R. Civ. P. 37, [*Id.* at 1–4]. Plaintiff Replies, [R. 59], that qualified immunity does not apply here, and that—if it did—such immunity has been waived, [*Id.* at 1, 3]; that Defendants mischaracterize Plaintiff's arguments under Fed. R. Civ. P. 36 as falling under Fed. R. Civ. P. 37, [*Id.* at 2]; and that Plaintiff is entitled to summary judgment based on undisputed facts admitted under Fed. R. Civ. P. 36, [*Id.* at 2].

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, in their Motion for Summary Judgment, [R. 54], argue that the defense of qualified immunity under *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), and *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2004), shields them from suit and that any injuries to Plaintiff were *de minimis*. [R. 54-1 at 5–9]. Plaintiff Responds, [R. 58], that qualified immunity does not apply, [*Id.* at 2–7]; and that, if qualified immunity did apply, it has now been waived through the Defendants' failure to respond to Plaintiff's Requests for Admission and other discovery requests, [*Id.* at 7–8]. Defendants Reply, [R. 61], countering each argument of Plaintiff, and propounding that Defendants—not Plaintiff—are the ones entitled to judgement as a matter of law. [*Id.* at 1–4].

## I. WHETHER QUALIFIED IMMUNITY APPLIES

Critical to the success of both Plaintiff's and Defendants' Motions to Dismiss is whether Defendants are immune from suit through qualified immunity. The question of whether qualified immunity applies to or was waived by Defendants is thus this Court's preliminary inquiry. "Qualified or 'good faith' immunity is an affirmative defense that must be pleaded by a defendant official." *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). As Defendants did raise qualified immunity in their answer, there is no issue as to whether the defense was properly pled. [R. 32, *Defense III*, at 4]. The affirmative defense, however, has both objective and subjective elements, both of which must be satisfied in order for the defense to apply. *Id.* at 815−16. The objective element requires "a presumptive knowledge of and respect for 'basic, unquestioned constitutional rights.'" *Id.* at 815 (quoting *Wood v. Strickland*, 420 U.S. 308, 322 (1975)). The subjective element requires purely "permissible intentions." *Id.* Qualified immunity thus provides an absolute defense for *good faith* government actors engaged in discretionary decision making. The defense will be

6

"defeated if an official 'knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], or if he took the action *with the malicious intention* to cause a deprivation of constitutional rights or other injury." *Id.* (quoting *Strickland*, 420 U.S. at 322).

The subjective element of qualified immunity has oft been wrestled with by the courts as the key to determining the defense's application, leaving fact questions precluding summary judgment. "[A]n official's subjective good faith has been considered to be a question of fact that some courts have regarded as inherently requiring resolution by a jury." *Fitzgerald*, 457 U.S. at 816. It is for this reason that plaintiffs arguing qualified immunity does not apply in a motion for summary judgment must also meet a substantial burden. "[B]are allegations of malice should not suffice to subject government officials either to the costs of trial or to the burdens of broad-reaching discovery." *Id.* at 817–18.

In a suit against a government official for the alleged violation of a constitutional or statutory right, "the requisites of a qualified immunity defense must be considered in proper sequence." *Saucier v. Katz*, 533 U.S. 194, 201 (2001). "Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." *Id.* "A court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Id.* "This must be the initial inquiry." *Id.*; *but see Pearson v. Callahan*, 555 U.S. 223, 236 (2009) ("On reconsidering the procedure required in *Saucier*, we conclude that, while the sequence set forth there is often appropriate, it should no longer be regarded as mandatory."). "If no constitutional right would have been violated were the allegations established,

7

there is no necessity for further inquiries concerning qualified immunity." *Saucier*, 533 U.S. at 201. Qualified immunity precludes the suit. "[I]f a violation could be made out on a favorable view of the parties' submissions," however, "the next, sequential step is to ask whether the right was clearly established." *Id.* If not, the suit is precluded. If so, the suit may proceed. *Id.* But the right "clearly established" must also be "particularized." *Id.* at 202. "The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Thus it is true that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818. But, "[w]here an official could be expected to know that certain conduct would violate statutory or constitutional rights, he should be made to hesitate; and a person who suffers injury caused by such conduct may have a cause of action." *Id.* at 819. Where an official violates clearly established constitutional or statutory rights of which the official should have known, qualified immunity will not protect him from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 524 (1985).

### A. Whether a Constitutional Right has been Violated

The determination of whether qualified immunity precludes an Eighth Amendment claim under 42 U.S.C. § 1983 utilizes the aforementioned standards. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). Thus, the determination of whether a constitutional violation has been committed involves both objective and subjective components. *Id.* "First, 'the subjective component focuses on the state of mind of the prison official.'" *Id.* (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). "We ask 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Id.* (quoting *Hudson*

8

*v. McMillian*, 503 U.S. 1, 7 (1992)). "Second, 'the objective component requires the pain inflicted to be sufficiently serious.'" *Id.* (quoting *Williams*, 631 F.3d at 383). "This component requires a 'contextual' investigation, one that is 'responsive to contemporary standards of decency.'" *Id.* (quoting *Hudson*, 503 U.S. at 8). "While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." *Id.* (citing *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency are always violated . . . whether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

### i. Subjective Component

In evaluating the subjective component of an Eighth Amendment claim, courts have found it pertinent "to consider 'such factors as the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of the injury inflicted.'" *Cordell*, 759 F.3d at 581 (quoting *Whitley v. Albers*, 475 U.S. 312, 321 (1986)). In addition, courts may consider "'the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them, and any efforts made to temper the severity of a forceful response.'" *Id.* Considering all of these factors in light of the parties' motions, [R. 52; R. 54], this Court concludes there remains a question of fact with regard to the subjective component of Plaintiff's Eighth Amendment claims. For that reason, and on this basis independently, summary judgment is improper.

Plaintiff essentially contends that, "while incarcerated at [the Complex], his constitutional rights were violated when he was grabbed in the cafeteria, slammed against a wall, struck multiple times, and restrained." [R. 57 at 3 (citing [R. 52-1 at 2–4])]. Plaintiff has submitted nine witness affidavits in support of his position that Defendants, not Plaintiff, initiated the physical contact,

9

that Defendants did so maliciously, and that Plaintiff did not resist in a manner calling for the application of the extent of force used by Defendants. [*Id.*; R. 1-1 at 1–13]. Defendants, however, contend that "instead of complying with a valid instruction to conform to policy, Plaintiff became belligerent and combative, slamming down his tray, balling up his fists, and declaring that it would take all of the correctional officers present to remove him from the cafeteria." [R. 54-1 at 1–3]. Likewise, Defendants contend "that, when officers attempted to handcuff and subdue Plaintiff, he struck an officer in the ribs before he was eventually restrained, and continued to 'struggle[e] to break free of the officers' control.'" [R. 57 at 4 (quoting [*Id.*])]. There is evidence submitted by both parties to support both versions of events. [*Compare* R. 52-1, *Plaintiff's Motion for Summary Judgment*, at 1–3, and affidavits and evidentiary exhibits attached thereto (supporting the malicious use of unreasonable force against Plaintiff, including slamming Plaintiff into various door frames and structures while Defendants had already restrained Plaintiff), *with* R. 54-1, *Defendants' Motion for Summary Judgment*, at 1–4, and affidavits and exhibits attached thereto (in support of the proposition that Plaintiff disobeyed direct orders and was not subject to malicious, unreasonable force, and that any injuries of Plaintiff were due to his resistance of Defendants' attempts to restrain Plaintiff), *and* R. 1-1, *Plaintiff's Exhibits*, (including affidavits of witnesses and evidentiary exhibits supporting the malicious use of unreasonable force against Plaintiff, including slamming Plaintiff into structures after Plaintiff had already been restrained)].

In evaluating cross-motions for summary judgment, it is not this Court's prerogative to weigh the credibility of the evidence submitted by the parties. Rather, "we must accept the [non-movant's] version of events without weighing the evidence or assessing the credibility of prospective witnesses." *Cordell v. McKinney*, 759 F.3d 573, 587 (6th Cir. 2014). Plaintiff has alleged sufficient "facts" to satisfy the subjective component of the Eighth Amendment inquiry.

Defendants have contradicted those facts with their own "facts." For that reason, without weighing the strength of the evidence, this Court believes there remain material, factual questions precluding summary judgment. Nonetheless, this Court must continue to evaluate whether qualified immunity applies. Because Plaintiff has satisfied the subjective component of the Eighth Amendment inquiry, so long as Plaintiff also satisfies the other requirements of the Eighth Amendment and qualified immunity inquiries, summary judgment should not be granted for Defendants, because, in that case, qualified immunity will not preclude this suit.

### ii. Objective Component

The evaluation of the objective component of an Eighth Amendment claim is "a 'contextual' inquiry that is 'responsive to contemporary standards of decency.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992)). "The seriousness of the injuries are not dispositive; as the Supreme Court has held, '[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident.'" The standard of decency by which prison guards' actions are evaluated is that of "'the evolving standards of decency that mark the progress of a maturing society.'" *Cordell v. McKinney*, 759 F.3d 573, 585 (6th Cir. 2014) (quoting *Hudson*, 503 U.S. at 10)). Just as this Court found when evaluating the subjective component of Plaintiff's Eighth Amendment claim, this Court finds here too that there remain questions as to the material facts in this case with regard to the objective nature of Plaintiff's alleged Eighth Amendment harm, but also that Plaintiff has *alleged* sufficient facts to satisfy the objective component of the inquiry into his Eighth Amendment claims. For that reason, so long as the rights Plaintiff claims to have been violated by Defendants are clearly established, summary judgment on the basis of qualified immunity must be denied to Defendants.

Where a plaintiff's "and the prison officials' testimony regarding [the plaintiff's] injuries differ, we must assume the non-movant's version of events." *Cordell*, 759 F.3d at 587. As discussed, Plaintiff and Defendants—although in agreement on certain facts—generally provide different explanations and evidence as to how and why Plaintiff received his head injury. [*Compare* R. 52-1, *Plaintiff's Motion for Summary Judgment*, at 1–3, and affidavits and evidentiary exhibits attached thereto (supporting the malicious use of unreasonable force against Plaintiff, including slamming Plaintiff into various door frames and structures while Defendants had already restrained Plaintiff), *with* R. 54-1, *Defendants' Motion for Summary Judgment*, at 1–4, and affidavits and exhibits attached thereto (in support of the proposition that Plaintiff disobeyed direct orders and was not subject to malicious, unreasonable force, and that any injuries of Plaintiff were due to his resistance of Defendants' attempts to restrain Plaintiff), *and* R. 1-1, *Plaintiff's Exhibits*, (including affidavits of witnesses and evidentiary exhibits supporting the malicious use of unreasonable force against Plaintiff, including slamming Plaintiff into structures after Plaintiff had already been restrained)].

First, if Plaintiff's allegations are true, a jury might be reasonable in finding Defendants' actions were disproportionate to Plaintiff's actions *and* that Plaintiff's Eighth Amendment rights were violated. "[W]e doubt that slamming a handcuffed and controlled prisoner headfirst into a concrete wall comports with human decency." *Cordell*, 759 F.3d at 586. Nonetheless, if Defendants' version of the facts are true, a jury might not be unreasonable in finding Defendants reacted to Plaintiff with reasonable force.

Second, Plaintiff did suffer notable injuries from his interactions with Defendants. It is clear that Plaintiff was bruised at his wrists and suffered a head injury resulting in a "deep abrasion," blurred vision, delayed reaction to light, drowsiness, and slurred speech. [R. 1 at 3 ¶ 11;

*id.* at 4 ¶ 14; R. 1-1, *Nurse Lewis' Accident/Extraordinary Occurrence Report*, at 15; R. 32 at 2 ¶ 11; *id.* at 2 ¶ 14]. Plaintiff's injuries—and, in fact, Plaintiff's entire factual scenario—is similar to *Cordell v. McKinney*, where the Sixth Circuit found a head injury thought at one point to be "so small it was hard to tell if it was a laceration or just an abrasion" (that also resulted in cognitive difficulties similar to Plaintiff's) to be sufficiently severe to warrant an Eighth Amendment question and survive a motion for summary judgment. 759 F.3d at 586. There, like here, the key question came down to whether the plaintiff had been hit or otherwise injured *after* he had already been restrained. *Id.* The Sixth Circuit ultimately held that the plaintiff's and defendants' divergent factual scenarios precluded summary judgment, as to grant summary judgment in that case, so similar to this case, would have involved an improper weighing of the evidence, which is suitable only for the fact finder at trial. *Id.*

Finally, it must be noted that Defendants' characterization of Plaintiff's injuries as *de minimis* is directly contrary to law long-established at the Supreme Court of the United States. A *de minimis* injury "is an insufficient basis" upon which to grant summary judgment. *Williams v. Curtin*, 631 F.3d 380, 384 (6th Cir. 2011). The proper inquiry is "the nature of the force rather than the extent of the injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 4 (1992) ("[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.")). Thus, while the extent of Plaintiff's arguably severe head injury might weigh in his favor at trial, the extent of his injury is not dispositive here. Rather, the issue is whether Plaintiff was subjected to undue and malicious force *after* he had already been restrained by Defendants. This inquiry remains the same regardless of which party was the first aggressor. *See Cordell v. McKinney*, 759 F.3d 573 (6th Cir. 2014). "Furthermore, as we have previously held, striking a neutralized suspect

13

who is secured by handcuffs is objectively unreasonable." *Schreiber v. Moe*, 596 F.3d 323, 332–33 (6th Cir. 2010). As discussed, the claims of both parties are backed up by their evidence, and it is clear that the facts are sufficiently in dispute that summary judgment is improper. This Court could not otherwise find without engaging in a prohibited weighing of the evidence.

### B. Whether the Right Violated was "Clearly Established"

The final step in the determination of whether qualified immunity applies is whether "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987) (internal citations omitted); *see also Sample v. Bailey*, 409 F.3d 689, 698 (6th Cir. 2005). In this determination, the clearly established right at issue must be narrowly construed. Courts "'are not to define clearly established law at a high level of generality,' since doing so avoids the crucial question [of] whether the official acted reasonably in the particular circumstances that he or she faced." *Plumhoff*, 134 S.Ct. at 2023 (quoting *Ashcroft v. al-Kidd*, 536 U.S. 731, 742 (2011)).

Plaintiff alleges that—after having been restrained at the arms and legs, and while being carried in the "chicken wing position"—Defendants "intentionally crash[ed] [Plaintiff's] head into every door and door frame between the prisons['] basement A.K.A. 'Phase 1 Pill Call' and the segregation dorm," causing Plaintiff "severe pain in his head," [R. 1 at 4 ¶ 7, 8]; that Plaintiff was "jammed into a corner" of a shower stall in the Segregation Area, where his handcuffs were tightened until Plaintiff "squealed in pain," [*Id.* at 5 ¶ 10]; and that, upon her entry into the shower stall, Nurse Lewis noted the injury to Plaintiff's head, stating "he might need stitches," [*Id.* ¶ 11

14

(citing [R. 1-1, *Nurse Lewis' Accident/Extraordinary Occurrence Report*, at 15])]. If his allegations are true, there is no question that Plaintiff suffered an injury of clearly established constitutional magnitude. "[A]ny reasonable official would know that ramming a handcuffed and controlled prisoner headfirst into a concrete wall is an unreasonable method of regaining control of a prisoner in a hallway occupied only by other jail officials." *Cordell v. McKinney*, 759 F.3d 573, 588 (6th Cir. 2014) (citing *Schreiber v. Moe*, 596 F.3d 323, 332–33 (6th Cir. 2010) ("Furthermore, as we have previously held, striking a neutralized suspect who is secured by handcuffs is objectively unreasonable.")).

Defendants, however, insist Plaintiff has exaggerated his injuries, and that—if he received any injury at all—Plaintiff's injuries are *de minimis*. As discussed previously, however, this is a mischaracterization of the law. A *de minimis* injury "is an insufficient basis" upon which to grant summary judgment. *Williams v. Curtin*, 631 F.3d 380, 384 (6th Cir. 2011). The proper inquiry is "the nature of the force rather than the extent of the injury." *Wilkins v. Gaddy*, 559 U.S. 34, 34 (2010) (citing *Hudson v. McMillian*, 503 U.S. 1, 4 (1992) ("[T]he use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.")). It is the use of excessive force, not the resulting injury itself, that violates the Eighth Amendment. Thus, so long as Plaintiff has alleged force that would be violative of a clearly established right under the Eighth Amendment, he will satisfy the inquiry regardless of the extent of his resulting injury. *Id.* This Plaintiff has done, by submitting evidence of the use of excessive physical force against him, resulting in a severe injury to his head, after Plaintiff was already restrained. Plaintiff's right to be free from excessive physical force in the manner allegedly inflicted is clearly established. *Cordell v. McKinney*, 759 F.3d 573, 588 (6th Cir. 2014) (citing

*Schreiber v. Moe*, 596 F.3d 323, 332–33 (6th Cir. 2010) ("Furthermore, as we have previously held, striking a neutralized suspect who is secured by handcuffs is objectively unreasonable.")).

This Court believes that qualified immunity does not preclude Defendants from suit. Summary judgment must not be granted to Defendants on that basis. In addition, Defendants have failed to allege any other evidence to show that there is no question of material fact with regard to the facts of the case and that Defendants are otherwise entitled to summary judgment as a matter of law. Thus, summary judgment for Defendants must be denied.

## II. WHETHER MATTERS ARE DEEMED ADMITTED FOR DEFENDANTS' FAILURE TO TIMELY RESPOND TO PLAINTFF

Having dispensed with the initial inquiry of whether qualified immunity applies to shield Defendants from suit—and finding it does not, here precluding summary judgment for Defendants—this Court must now resolve whether Defendants' failure to engage in the discovery process with Plaintiff leads to the conclusion that summary judgment must be granted in Plaintiff's favor. As disclosed by the record, Plaintiff attempted multiple times to engage Defendants in the discovery process, submitting two sets of interrogatories, requests for admissions, and requests for the production of documents; the most recent set of which was submitted by Plaintiff to Defendants on March 1, 2017. [R. 47]. Defendants refused to respond to the second set of discovery requests within thirty days; as such—but without seeking to deem matters admitted—Plaintiff submitted a Motion to Compel discovery on April 19, 2017. [*Id.*]. Plaintiff's Motion to Compel was granted on May 23, 2017, and Defendants submitted responses to all of Plaintiff's requests on June 2, 2017, including responses to Plaintiff's requests for admission. [R. 57; R. 60]. As noted, Plaintiff argues he is entitled to summary judgment due to the lack of a dispute as to material facts based upon Defendants' failure to timely respond to Plaintiffs' requests for admission under Fed. R. Civ. P. 36. [R. 52-1 at 3–7]. Defendant's Respond that Plaintiff is not so entitled. [R. 56].

At first glance, the facts of this case paired with the plain language of the civil rules themselves might appear to dispense with the matter. Fed. R. Civ. P. 26(b)(1) mandates that, unless otherwise limited, "[p]arties may obtain discovery regarding *any* nonprivileged matter that is relevant to *any* party's claim or defense and proportional to the needs of the case." (emphasis added). Fed. R. Civ. P. 36(a)(1) then provides "[a] party may serve on *any* other party a written request to admit, for purposes of the pending action only, the truth of *any* matters within the scope of Rule 26(b)(1) relating to [] facts, the application of law to fact, or opinions about either; and [] the genuineness of described documents." And Fed. R. Civ. P. 36(b)(3) dictates that "a matter *is admitted* unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." (emphasis added). Further, "[a] matter admitted under this rule *is conclusively established* unless the court, on motion, permits the admission to be withdrawn or amended." *Id.* (emphasis added).

Despite the apparent severity of Fed. R. Civ. P. 36, however, courts in the Sixth Circuit are shy to impose a "draconian" interpretation of the civil rules. *United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009). Thus, as discussed previously by this Court, while it is "true that untimely responses to requests for admission are deemed admitted under Fed. R. Civ. P. 36(a)(3), the court has discretion to allow additional time for untimely responses, even after the time fixed by the rule has expired, thus permitting what would otherwise be untimely answers." [R. 57 (Atkins, J.) (compelling Defendants to respond to Plaintiff's requests for admission and other discovery requests (citing 8B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2257 (3d ed. 2010)))]. There is ample "discretion vested in district courts to permit a longer time for a written answer to a request for admissions and to accept 'the filing of an

answer that would otherwise be untimely.'" *Petroff-Kline*, 557 F.3d at 293 (quoting *Gutting v. Falstaff Brewing Corp.*, 710 F.2d 1309, 1312 (8th Cir.1983)); *see also* Fed. R. Civ. P. 36(a)(3) ("A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the court."). "Hence, 'the failure to respond in a timely fashion does not require the court automatically to deem all matters admitted.'" *Petroff-Kline*, 557 F.3d at 293. (quoting *Gutting*, 710 F.2d at 1312)).[5]

Plaintiff argues that summary judgment should be granted in his favor because there is no issue as to a material fact in this case because Defendants failed to timely respond to his Fed. R. Civ. P. 36 requests for admission, resulting in those matters being admitted pursuant to Fed. R. Civ. P. 36(b)(3). [R. 52]. Defendants, obfuscating the merit of Plaintiff's argument and mischaracterizing Plaintiff's argument as falling under Fed. R. Civ. P. 37, argue it would be inappropriate to grant Plaintiff's Motion for Summary Judgment based on matters admitted under Fed. R. Civ. P. 36. [R. 56]. As a simple fact of procedural law, however, a district court *may* grant summary judgment whenever and wherever such judgment is called for under Fed. R. Civ. P. 56, regardless of whether the established facts making such judgment appropriate arise under Fed. R. Civ. P. 36 admissions. That is, in fact, the point. *San Lorenzo Nursery Co. v. Western Carloading Co.*, 91 F.Supp. 553 (S.D.N.Y.1950); *In re Narowetz Mechanical Contractors, Inc.*, 99 B.R. 850 (N.D. Ill.1989), *aff'd* 898 F.2d 1306 (7th Cir. 1989); *but see Equal Employment Opportunity Comm'n v. Baby Products Co., Inc.*, 89 F.R.D. 129 (E.D. Mich. 1981).

---

[5] A formal motion is not required for leave to file a late response to requests for admission, and a court need not grant leave to withdraw admissions resulting from a failure to respond. United States v. Petroff-Kline, 557 F.3d 285, 293 (6th Cir. 2009) (citing Kerry Steel Inc. v. Paragon Indus., 106 F.3d 147, 153–54 (6th Cir.1997)). "Instead a withdrawal 'may be imputed from a party's actions,' including the filing of a belated denial." *Id.* (citing Chancellor v. City of Detroit, 454 F.Supp.2d 645, 666 (E.D. Mich. 2006)).

Regardless, this Court waived, or at least never deemed admitted, Defendants' Fed. R. Civ. P. 36 admissions for failure to respond in permitting Defendants to file late discovery responses. [R. 57 at 3 ("Defendants' failure to respond was 'at most excusable neglect,' and Plaintiff has not shown what prejudice would result from the brief extension; permitting Defendants to file untimely responses is appropriate here.")]. And Defendant's discovery responses to Plaintiff's discovery requests, [R. 52, *Plaintiff's Motion for Summary Judgment*, and exhibits attached thereto], are insufficient to resolve the material factual questions that must be undisputed for summary judgment under Fed. R. Civ. P. 56 to be permissible. For that reason, summary judgment based solely upon Defendants' late participation in the discovery process would be inappropriate in this case. Plaintiff's Motion for Summary Judgment must be denied on that basis.

## CONCLUSION

"We recognize that 'the limits of the Eighth Amendment are not easily or exactly defined,' but we believe 'broad and idealistic concepts of dignity, civilized standards, humanity, and decency are useful and usable.'" *Cordell v. McKinney*, 759 F.3d 573, 588 (6th Cir. 2014) (reversing and remanding an improper grant of summary judgment in a case involving a nearly identical factual scenario to that *sub judice*) (citing *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir. 1968)). In this case, if Plaintiff's version of events is accurate, there likely has been an Eighth Amendment violation. *Id.* Certainly, the extent of his head injury leaves open questions as to precisely what occurred, and why. [*See* R. 1 at 3 ¶ 11; *id.* at 4 ¶ 14; R. 1-1, *Nurse Lewis' Accident/Extraordinary Occurrence Report*, at 15; R. 32 at 2 ¶ 11; *id.* at 2 ¶ 14]. If, however, Defendants' version of events is accurate, then a jury might not be improper in finding for Defendants. "At this point, however, the facts are not crystalized enough to award judgment as a matter of law to either party." *Id.* Plaintiff and Defendants—though in agreement as to certain facts—paint sufficiently diverging

19

factual scenarios that summary judgment under Fed. R. Civ. P. 56 would be improper in this case. Thus, for the reasons discussed, **IT IS HEREBY RECOMMENDED** that both Plaintiff's and Defendants' Motions for Summary Judgement, [R. 52; R. 54], be **DENIED**.

Particularized objections to this Report and Recommendation must be filed within fourteen (14) days of the date of service of the same or further appeal is waived. 18 U.S.C. § 636(b)(1); *United States v. Campbell*, 261 F.3d 628, 632 (6th Cir. 2001); *Bituminous Cas. Corp. v. Combs Contracting Inc.*, 236 F. Supp. 2d 737, 749–50 (E.D. Ky. 2002). Generalized objections or objections that require a judge's interpretation are insufficient to preserve the right to appeal. *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004); *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).

This the 5th day of December 2017.

Signed By:
Edward B. Atkins   *EBA*
United States Magistrate Judge